IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY ALAN ELLER,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF SANTA ROSA, *et al.*,<br><br>　　　　　　Defendants. | NO. C09-01094 TEH<br><br>ORDER DENYING<br>PLAINTIFF'S MOTION FOR<br>LEAVE TO AMEND<br>COMPLAINT |

This matter came before the Court on October 15, 2009, on the Motion for Leave to File Second Amended Complaint by Plaintiff Troy Alan Eller ("Eller"). For the reasons set forth below, Eller's motion is DENIED.

**BACKGROUND**

Eller's allegations stem from a visit to the emergency room of Santa Rosa Memorial Hospital ("Hospital") for the treatment of "minor injuries" on October 29, 2006. First Amended Complaint ("FAC") ¶ 11. Eller, who wears a medical bracelet identifying him as suffering from epilepsy and seizures, claims he "was kept on a gurney for an extensive period of time" without being examined by an attending physician or having a medical history taken. *Id.* ¶¶ 12-14. When he attempted to get off the gurney to leave the Hospital, he was "commanded" to stay by Mark Drafton, a Hospital employee, who then sought the aid of two officers from the Santa Rosa Police Department ("SRPD"), Kyle Philp and Tommy Isachsen. *Id.* ¶¶ 16, 19. Eller alleges that when he again tried to get off the gurney, the officers wrestled him to the ground and twice shot him with a Taser gun. *Id.* ¶¶ 21-22. He was arrested and charged with resisting lawful arrest and battery on a peace officer, charges that were ultimately dismissed. *Id.* ¶¶ 23-24.

Eller commenced this action in the Superior Court of California, Sonoma County, on October 29, 2008, naming the Hospital, the SRPD, the City of Santa Rosa ("City"), Drafton, Philp, and Isachsen as Defendants. He filed a First Amended Complaint ("FAC") on November 24, 2008, to correct errors in the pleading. Eller charges the Hospital and Drafton with custodial neglect in violation of the Elder Abuse and Dependent Adult Civil Protection Act, Cal. Welf. & Inst. Code § 15600 *et seq.*, and asserts two 42 U.S.C. § 1983 claims against the City, SRPD, Philp, and Isachsen for excessive force and unreasonable search and seizure. The matter was removed to this Court on March 12, 2008.

Eller now seeks leave to file a Second Amended Complaint incorporating two additional causes of action: for violation of California's Disabled Persons Act, Cal. Civ. Code § 54 *et seq.*, against the Hospital and Drafton, and for breach of written contract, against the Hospital alone. The Hospital and Drafton ("Hospital Defendants") oppose the motion, arguing that amendment would be futile because neither claim is viable.

**LEGAL STANDARD**

A party "may amend" a complaint "only with the opposing party's written consent or the court's leave," which the court "should freely give . . . when justice so requires." Fed. R. Civ. Proc. 15(a)(2). The policy of "favoring amendments to pleadings should be applied with extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (internal citations omitted). Five factors are considered on motion for leave to amend: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." *Nunes v. Ashcroft*, 348 F.3d 815, 818 (9th Cir. 2003). The factors are not all equal: prejudice is the "touchstone of the inquiry under rule 15(a)" and therefore "carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) "Futility alone can justify the denial of a motion for leave to amend." *Nunes*, 348 F.3d at 818.

"[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."

2

*Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). "Thus, evaluating whether a proposed amendment is futile is guided by the same standard as a Rule 12(b)(6) motion to dismiss." *Redwood Christian Schs. v. County of Alameda*, No. C-01-4282 SC, 2007 U.S. Dist. LEXIS 8491, at *5 (N.D. Cal. Jan. 19, 2007) (citing *Miller*, 845 F.2d at 214). On motion to dismiss, "we take the complaint's allegations of fact as true and construe the complaint in the light most favorable to the plaintiff." *Shanks v. Dressel*, 540 F.3d 1082, 1084 n.1 (9th Cir. 2008). A claim should be dismissed where the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint "'stops short of the line between possibility and plausibility of entitlement to relief'" when it "pleads facts that are 'merely consistent with' a defendant's liability." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557).

**DISCUSSION**

The Hospital Defendants ask the Court to deny Eller's motion on the basis of futility. The Disabled Persons Act only guarantees physical access to facilities, they argue, and Eller – by his own admission – encountered no obstacles in entering the Hospital. The contract claim likewise cannot advance, the Hospital Defendants assert, because Eller never signed the document and fails to show mutual assent. Eller argues that the causes of action he proposes would survive a motion to dismiss and should be permitted due to the liberal policy in favor of allowing such amendments.

**I.   The Disabled Persons Act**

California's Disabled Persons Act (the "DPA") provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places." Cal. Civ. Code § 54(a). It also guarantees "[i]ndividuals with disabilities . . . full

and equal access, as other members of the general public, to accommodations, advantages, facilities, medical facilities, including hospitals . . . and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." *Id.* § 54.1. The statute creates a right of action against anyone who "denies or interferes with admittance to or enjoyment of the public facilities" or "otherwise interferes with the rights of an individual with a disability." *Id.* § 54.3. Eller alleges in his Proposed Second Amended Complaint ("PSAC") that he is disabled and that Hospital Defendants denied him "full and equal access to" – and interfered with his "admittance to and enjoyment of" – Hospital facilities by refusing to provide medical care and causing the police to accost and arrest him. PSAC ¶¶ 57-58.

The viability of Eller's DPA claim hinges on what kind of access the statute guarantees: whether it deals only with physically entering the facility, or also with the provision of services once inside. In interpreting the DPA, this Court "must determine what meaning the state's highest court would give to the law." *Bass v. County of Butte*, 458 F.3d 978, 981 (9th Cir. 2006). "In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Ariz. Elec. Power Coop. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995).

Eller does not allege that he encountered any difficulty in physically accessing the Hospital facilities, but claims only that what transpired inside the hospital violated the DPA. He points out that the DPA permits an action based on interference with the "enjoyment of" public facilities, not merely "admittance to" those facilities. Reply at 3 (citing Cal. Civ. Code § 54.3(a)). The statute prohibits "more than just barriers that prevent physical access into a place of business," but rather "encompasses all barriers to the full and free use of facilities that are available to the general public," he argues. *Id.* at 2.

The cases Eller cites to support this proposition, however, suggest the contrary: that the DPA was designed only to address physical access. The California Court of Appeal characterized the statute as follows:

4

> Historically, sections 54 and 54.1 have been construed to mean that "all physically handicapped are entitled to the same right as the able-bodied to full and free use of public facilities and places," requiring operators of such public facilities and accommodations to "'open [their] doors on an equal basis to all that can avail themselves of the facilities without violation of other valid laws and regulations.'"

*Coronado v. Cobblestone Village Cmty. Rentals, L.P.*, 163 Cal. App. 4th 831, 844 (2008) (quoting *People ex rel. Deukmejian v. CHE, Inc.*, 150 Cal. App. 3d 123, 133 (1983)). That court observed more recently that the DPA's focus "is upon *physical* access to public places, though the statute may also be construed as requiring equal physical access to a nontangible location such as an Internet site." *Turner v. Ass'n of Am. Med. Colls.*, 167 Cal. App. 4th 1401, 1412 (2008) (emphasis in original).

The only case cited by Eller that supports his position is *Aikins v. St. Helena Hospital*, 843 F. Supp. 1329 (N.D. Cal. 1994), in which this Court declined to dismiss a DPA claim based on a hospital's failure to provide an interpreter to the deaf spouse of a patient. However, the Court did not hold (as Eller claims) that such a cause of action was viable; the Court simply declined to decide that it wasn't. "The Court cannot say as a matter of law that [the doctor] did not interfere with [plaintiff's] rights under section 54.1 by failing to provide her with an interpreter or to take other affirmative steps to ensure proper communication with her." *Aikins*, 843 F. Supp. at 1340. Since the federal district court can only interpret California law as the California courts would, *Aikins* carries very little weight against the far more recent state court decisions interpreting the DPA. Furthermore, the violation alleged in *Aikins* – the failure to provide an interpreter to a patient's deaf spouse – was directly related to the plaintiff's disability. Here, Plaintiff has alleged no facts suggesting that his failure to be treated was in any way connected to or precipitated by his disability.

The most analogous case from the California Court of Appeal is *Turner*, which deals not with physical access to a facility, but with services provided inside. In *Turner*, the California Court of Appeal rejected a DPA claim by students with learning disabilities seeking testing accommodations – such as more time or a private room – to take the Medical College Admissions Test, or MCAT. "Nothing in the language of section 54 can be

reasonably construed to require a modification of the test procedures themselves, except to the extent necessary to guarantee *physical access to the place* in which the test is administered." *Turner*, 167 Cal. App. 4th at 1412 (emphasis added). The court then considered whether the claim could be cognizable under section 54.1's guarantee that individuals with disabilities get "full and equal access, *as other members of the general public*, to accommodations, advantages, [and] facilities[.]" *Id.* at 1412-13 (quoting Cal. Civ. Code § 54.1) (italics in *Turner*). The statute's "reference to 'advantages' might be broadly interpreted to require equal access in the taking of the MCAT itself, in addition to the facility in which it is administered," the court observed. *Turner*, 167 Cal. App. 4th at 1413. Nonetheless, since the DPA promises disabled individuals only the level of access "available to 'other members of the general public'" who "are not entitled to the performance-related accommodations sought by plaintiffs," the court found the statute required no such accommodations. *Id.*

*Turner* emphasized that the DPA deals only with "physical access to public places." 167 Cal. App. 4th at 1412. Assuming Eller's claim is premised on the statute's "advantages" language, as discussed in *Turner*, no facts suggest he was treated any differently than any other members of the public on the basis of his disability. The only allegation in the PSAC regarding Eller's disability is that he wore a medical bracelet that displays his "medical condition of epilepsy and seizures." PSAC ¶ 14. Plaintiff draws no connection between his disability and his failure to receive treatment. It is inconceivable that a disabled individual could claim a DPA violation based on circumstances unrelated to his disability. To hold otherwise would be to ignore the statutory language guaranteeing only as much access as granted to "members of the general public."

Even if Eller could plead such facts, the weight of California authority goes against a reading of the DPA as protecting anything other than physical access for the disabled. The DPA guarantees "full and free use of . . . public places" and "full and equal access," which are "legal terms of art" that "stand for a complex suite of duties." *Madden v. Del Taco, Inc.*, 150 Cal. App. 4th 294, 301 (2007). "[S]ection 54 has always drawn meaning from a growing

body of legislation intended to reduce or eliminate the *physical impediments* to participation of physically handicapped persons in community life, i.e., the 'architectural barriers' against access by the handicapped to buildings, facilities, and transportation systems used by the public at large." *Id.* (internal quotation marks and citations omitted) (emphasis added). Eller points to no California case that holds otherwise.

The DPA only protects disabled individuals against physical impediments to accessing public places. Eller's proposed DPA claim does not allege any such barrier, establishing to the contrary that he could physically access Hospital facilities. The Court therefore DENIES Plaintiff leave to add a cause of action under the DPA.

## II. Breach of Contract

Eller also seeks leave to add a claim against the Hospital for "breach of written contract." Eller alleges that he and the Hospital "entered into a written contract for the provision of medical care to Plaintiff," which required the Hospital to "provide reasonable and necessary medical care and treatment to Plaintiff in exchange for payment of its fees and costs." PSAC ¶¶ 61. The Hospital breached that contract by, Eller alleges, "refusing to provide the medical care and services to Plaintiff as it contracted for, and by causing Plaintiff to be accosted, shot by a Taser gun, and arrested[.]" *Id.* ¶ 63.

The Hospital urges the Court to deny leave to amend based, again, on futility. Given that Eller never signed the contract and pleads no facts showing mutual assent, the Hospital argues that no contract was formed. It also claims the contract only establishes Eller's financial responsibility to pay for medical services rendered, and includes no promise by the Hospital to provide medical care. Finally, the Hospital contends Eller cannot seek damages based on his arrest by SRPD officers, which was not reasonably foreseeable from a breach of the alleged contract.

"A cause of action for breach of contract requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom." *McKell v. Wash. Mutual, Inc.*, 142 Cal. App. 4th 1457, 1489 (2006).

The PSAC pleads four elements: (1) that Plaintiff and the Hospital "entered into a written contract" under which the Hospital "would provide reasonable and necessary medical care and treatment to Plaintiff in exchange for payment of its fees and costs"; (2) that Plaintiff performed; (3) that the Hospital "materially breached" the contract by "refusing to provide medical care and services" and by "causing Plaintiff to be accosted, shot by a Taser gun, and arrested"; (4) and that he "suffered severe personal injury" as a result. PSAC ¶¶ 61-65.

Since Eller neither signed nor read the contract, the Hospital argues that the contract claim must fail for lack of mutual assent. This argument, however, relies on deposition testimony that could not be considered on a motion to dismiss and therefore should not be weighed now. Although mutual assent is a prerequisite for contract formation, an adequate pleading need only allege the contract's existence, which the PSAC does. *See McKell*, 142 Cal. App. 4th at 1489. Furthermore, Eller's failure to sign – the signature notes he was "unable to sign" because he was in "police custody" – does not by itself foreclose mutual assent, and therefore cannot render the claim futile.

Likewise, it is impossible to assess the Hospital's assertion that the "contract" was merely a financial responsibility form that did not obligate the Hospital to provide any services. Since the contract forms the basis of Eller's claim, it "may be incorporated by reference into" the complaint, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), and the Court may consider it as long as no party questions its authenticity, *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). However, neither party attached a full copy of the contract to their moving papers. The only document provided to the Court appears to be the signature page, on which the "undersigned certifies that he/she has read the reverse side of this page . . . and is the patient." Without the ability to review the terms set forth on the "reverse side" of the contract, the Court is bound by the allegations in the PSAC, which pleads that the Hospital agreed to "provide reasonable and necessary medical care and treatment to Plaintiff in exchange for payment of its fees and costs." PSAC ¶ 61.

Where the allegations in the PSAC fall short is on the issue of causality. A proper pleading for breach of contract alleges "defendant's breach and damage to plaintiff resulting

*therefrom.*" *McKell*, 142 Cal. App. 4th at 1489 (emphasis added). "A fundamental rule of law is that 'whether the action be in tort or contract compensatory damages cannot be recovered unless there is a causal connection between the act or omission complained of and the injury sustained.'" *McDonald v. John P. Scripps Newspaper*, 210 Cal. App. 3d 100, 104 (1989) (internal citations omitted). In *McDonald*, plaintiff – the runner-up in a county-wide spelling bee – argued that defendant violated the contest's rules by allowing two students from another school to advance to the county competition, one of whom beat plaintiff. Had that student "not progressed to the county-wide competition," plaintiff "would have won," he claimed. *Id.* at 103. The court, assuming the existence of a contract and a breach, affirmed dismissal based on causality: plaintiff could not "show that he was injured by the breach." *Id.* at 104. That "he was defeated by a contestant who 'had no right to advance in the contest'" was "irrelevant": he "lost the spelling bee because he misspelled a word." *Id.* The court emphasized that breach of contract claim must plead a "breach" and "damage to plaintiff resulting *therefrom*," noting that "the outcome of this case depends on that word." *Id.* (emphasis in original).

Eller's claim suffers from a similar causality problem. His contract with the Hospital was, by his own description, for the provision of "reasonable and necessary medical care and treatment." PSAC ¶ 61. The damages he alleges were the product of an altercation with police officers. It is inconceivable how a breach of contract by the Hospital – i.e. a failure to provide reasonable and necessary medical care – *caused* whatever injuries he claims to have suffered at the hands of the officers. Eller, like the plaintiff in *McDonald*, cannot "show that he was injured *by* the breach." *McDonald*, 210 Cal. App. 3d at 104 (emphasis added). His claim for relief is simply not "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court therefore DENIES Plaintiff leave to add a cause of action for breach of contract.

//
//
//

9

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Leave to Amend Complaint is DENIED.

**IT IS SO ORDERED.**

Dated: 10/23/09

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT